UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |
| TERESA GREEN, | : | No. 3:20-CV-00183 (JAM) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE STOP & SHOP SUPERMARKET COMPANY LLC, | : | |
| | : | |
| Defendant. | : | APRIL 9, 2020 |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

**DEFENDANT THE STOP & SHOP SUPERMARKET COMPANY LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant The Stop & Shop Supermarket Company LLC ("Stop & Shop") respectfully submits this memorandum of law in support of its motion to dismiss all claims alleged by Plaintiff Teresa Green for failure to state a claim upon which relief can be granted.

**I.    PRELIMINARY STATEMENT**

Green worked for Stop & Shop as a bake shop clerk from 1997 to 2019.  She alleges that Stop & Shop failed to accommodate her disability and terminated her employment because of her age and her disability.  However, Green has not alleged sufficient facts to state plausible claims for relief on any of those theories.  Therefore, all of her claims should be dismissed for that reason alone.

Green's termination-based discrimination claims should be dismissed for another reason, as well: she did not assert any claims or allegations relating to the termination of her employment with the EEOC or the CHRO.  Therefore, Green has failed to exhaust her administrative remedies regarding any claims based on the termination of her employment, precluding her from raising such claims here.

105239734.3

## II.     BACKGROUND

Green began working for Stop & Shop in 1997, and her final position there was as a full-time bakery clerk in Bridgeport.  (Dkt. No. 1-1 at 32 ¶¶ 1, 3-4.)[1]

Green has diabetes, and in 2016 she developed a foot ulcer that led her to take an extended leave of absence from work.  (Dkt. No. 11 ¶ 6; Dkt. No. 1-1 at 6 ¶ 5; Dkt. No. 12 at 2-6.)  When Green returned to work from her leave of absence, apparently in July 2016, her work schedule had changed, requiring her to work into the afternoon and evening.  (Dkt. No. 1-1 at 6 ¶ 6; Dkt. No. 12 at 7.)  As a result, Green stood more and received less rest between shifts, causing leg swelling, foot pain, and other diabetic complications that affected her attendance at work.  (Id.)  Green describes her absences from work as "excused by my doctor," based on an April 12, 2017 FMLA health care provider certification.  (Id.; Dkt. No. 12 at 8-11.)

Green's absences from work resulted in a January 27, 2017 counseling, a March 1, 2017 discipline, and an April 7, 2017 suspension.  (Dkt. No. 12 at 12-14.)  Before the suspension, Green was advised that she could explore potential leaves of absence, either personal, medical, or FMLA.  (Id. at 13.)  Green was also given the option of stepping down from a full-time position to a part-time position, but she rejected both a leave of absence and a step down to part-time.  (Dkt. No. 1-1 at 7 ¶ 9.)

Green requested the following accommodations on May 3, 2017: a first-shift schedule; an additional day off; and not to be transferred to Bridgeport.  (Dkt. No. 1-1 at 8 ¶ 11; Dkt. No. 1-1 at 33 ¶ 10; Dkt. No. 11 ¶ 6; Dkt. No. 12 at 16.)  Green and her union representative met with

---

[1] For purposes of this motion to dismiss, Stop & Shop assumes to be true the allegations of Green's Complaint and the exhibits to it.  (Dkt. Nos. 1, 1-1, 11, 12, 16.)  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (stating that, for purposes of Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference") (citation and quotation marks omitted).

Stop & Shop Human Resources Representative Julie Pinard to discuss her request. (Dkt. No. 1-1 at 8 ¶ 12.) Stop & Shop did not provide all of the accommodations that Green requested, in part because she could not have an additional day off and remain a full-time employee, but the parties reached a compromise that satisfied her needs: Green would be transferred to Bridgeport with a set morning schedule, and she would receive assistance during her one night shift a week. (Dkt. No. 1-1 at 8 ¶¶ 12-13; Dkt. No. 1-1 at 33 ¶ 10; Dkt. No. 11 ¶ 6; Dkt. No. 12 at 16.) Green felt that this compromise was "fair," and her "absences were drastically reduced." (Dkt. No. 1-1 at 8-9 ¶ 13.)

At one point, the part-time employee who assisted Green during her weekly night shift quit. (Dkt. No. 1-1 at 9 ¶ 14.) As a result, another part-time employee was rescheduled from assisting bake shop manager Aquanetta Murphy to assisting Green during her night shift, creating hostility between Murphy and Green. (Id.) Murphy did not know about Green's disability or her need for an accommodation, and she asked Green why she needed assistance. (Id. ¶ 15.) Green eventually told Murphy that she was disabled and that assistance on her once-a-week night shift was an accommodation for her disability, leading Murphy to scream that she had no idea Green was disabled because no one had told her. (Id.)

Murphy began telling store management that Green wasn't doing her job and that they should hire a part-time employee for the morning shift rather than a replacement for the part-time evening employee who had quit. (Dkt. No. 1-1 at 10 ¶ 16.) Store management began to scrutinize Green's need for accommodations. (Id. ¶ 17.) Green had her doctors write letters addressing her need for accommodations (id.), but those letters did not explain Green's need for the accommodations she had requested. (Dkt. No. 12 at 17-18.) Instead, the first letter, from a psychiatrist, stated only that Green "will need to have a work schedule that will allow [her] to

work from early AM to no later than early afternoon as necessary for [her] mental health." (Id. at 17.) The second letter, signed by "VA Connecticut Healthcare System," stated that the author "ha[s] been seeing Ms. Green for several years for a polymorphic skin eruption," and that "[h]er skin today looks better than I have seen it in 3 years." (Id. at 18.) Neither letter addressed Green's diabetes or her ulcer, the ostensible reasons for her requested accommodations. (Id. at 17-18.)

Green had additional meetings with HR Representative Pinard. (Dkt. No. 1-1 at 11 ¶ 19.) Pinard asked Green about her disabilities and requested more documentation regarding her disability and her need for accommodations. (Id.) Green describes Pinard as accusing her of not being disabled and harassing her to prove she was disabled. (Dkt. No. 11 ¶ 4(D).)

In a November 2018 meeting, Pinard told Green that having someone work with her during her once-a-week night shift was a hardship for the company. (Dkt. No. 1-1 at 11 ¶ 20.) Pinard asked Green why she couldn't work alone, and Green responded that she could work alone. (Id.) Pinard then asked Green to get a letter from her doctor stating why she couldn't work alone. (Id. ¶ 21.) Green requested the letter from her doctor, but the doctor did not provide it. (Id. at 12 ¶ 22.) As a result, Green was no longer provided assistance during her night shift. (Id.)

Green learned that she was going to be transferred to a busier store, where she would work afternoon and evening shifts. (Dkt. No. 1-1 at 12 ¶ 23.) She spoke to her union representative, who arranged another meeting with Pinard. (Id. ¶ 24.) Pinard told Green that she couldn't stay in the Bridgeport store because it was causing the company a financial hardship. (Id.) Green asked if she would have the same accommodations at her new store, and Pinard

replied that she would have to provide more specific documentation stating why she needed the accommodations. (Id.) Pinard gave Green FMLA forms and return to work forms. (Id.)

After meeting with Pinard, Green had a panic attack. (Dkt. No. 1-1 at 13 ¶¶ 24-25.) She went to the VA hospital emergency room, where she was told that she could stay for observation if she wished, but she chose to go home instead. (Id. ¶ 25.) Green went back to the hospital later that night, when she "had a severe mental breakdown." (Id. ¶ 26.) Green's doctor felt it was best for her to take an extended leave of absence from work, and the doctor completed paperwork excusing Green from work until May 1, 2019. (Id.; Dkt. No. 12 at 22-25.)

On April 10, 2019, Green filed a complaint with the CHRO, alleging that she had been denied reasonable accommodation, suspended, harassed, retaliated against, and forced to provide proof of her disabilities. (Dkt. No. 1-1 at 31.) Green did not allege that her employment had been terminated. (Id. at 31-34.)

Green's employment was terminated on May 8, 2019. (Dkt. No. 11 ¶ 4(B).)[2]

## III. ARGUMENT

### A. Standard of Review

In order to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). If the plaintiff "[has] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009); Matson v. Bd. of Educ. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011). "A claim has facial

---

[2] Green alleges that her employment was terminated on "May 8th," without indicating a year. (Dkt. No. 11 ¶ 4(B).) Since Green alleges that discrimination occurred "June 2017 - May 2019," she apparently alleges that her employment was terminated on May 8, 2019. (Id. ¶ 8.) Stop & Shop has no record of having terminated Green's employment on May 8, 2019, but it treats that allegation as true for purposes of this motion.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  A court does not accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### B. Green Has Failed to Exhaust Her Administrative Remedies for Claims Concerning the Termination of Her Employment.

Although Green alleges that Stop & Shop terminated her employment in violation of the Age Discrimination in Employment Act (ADEA) and the Americans with Disabilities Act (ADA), she did not allege those claims – or anything relating to them – to the EEOC or the CHRO.  (Dkt. No. 11 ¶ 4(B); Dkt. No. 1-1 at 5-13, 31-34.)  Therefore, Green has not exhausted her administrative remedies, and the claims based on the termination of her employment should be dismissed.

Before bringing an ADA or ADEA lawsuit in federal court, a plaintiff must file a timely charge of discrimination with the EEOC.  Hodge v. N.Y. Coll. of Podiatric Med., 157 F.3d 164, 166 (2d Cir. 1998) (ADEA); Sanchez v. United Cmty. & Family Servs., Inc., No. 3:14-CV-1810, 2015 WL 5010619, at *2 (D. Conn. Aug. 24, 2015) (ADA).  "A plaintiff's failure to exhaust administrative remedies before bringing an ADA claim in federal court is a proper basis for dismissal under rule 12(b)(6)." Demarco v. JP Morgan Chase, No. 10-CV-4110, 2011 WL 1837787, at *1 (E.D.N.Y. May 13, 2011).  The same is true for ADEA claims.  Anderson v. Derby Bd. of Educ., 718 F. Supp. 2d 258, 271 (D. Conn. 2010) (dismissing ADEA claim because plaintiff failed to exhaust his administrative remedies with the EEOC).

There are three types of situations in which a claim that was not alleged in an EEOC charge may be deemed "reasonably related" to the allegations in the charge, permitting the plaintiff to allege the claim in District Court. Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993). "Subsequent conduct is reasonably related to conduct in an EEOC charge if: [1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002) (quoting Butts, 990 F.2d at 1402-03). None of those exceptions to the exhaustion requirement applies here.

With respect to the first exception, Green's claims based on the alleged termination of her employment would not fall within the reasonably expected scope of an EEOC investigation of her charge of discrimination. "In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (citation and quotation marks omitted). Green's charge alleged no facts relating to the termination of her employment. (Dkt. No. 1-1 at 5-13, 31-34.) The Second Circuit has held that a wrongful termination claim is not "reasonably related" to an EEOC charge that made no allegations regarding termination. Alfano, 294 F.3d at 381-82.

The CHRO had no opportunity to investigate any claims concerning the alleged termination of Green's employment because the CHRO had no way to know that Green's employment had been terminated. In addition to Green's not alleging her termination in her CHRO charge, Stop & Shop's response to her charge also gave no indication that her

employment had been terminated.  (Dkt. No. 1-1 at 14-18.)  Instead, Stop & Shop's response, which it submitted to the CHRO on June 10, 2019, stated that Green was still employed by Stop & Shop at that time.  (Id. at 14; id. at 15 ¶ 1 ("The Complainant is employed by Stop & Shop as a full-time bake shop clerk at one of its stores in Fairfield, CT.").)  While Green's CHRO charge predated the alleged May 8, 2019 termination of her employment (id. at 31), Green has not alleged that she amended her charge to add any allegations relating to the termination of her employment, even though the CHRO and EEOC both maintained jurisdiction after that date.  (Id. at 1-2, 14.)  That warrants dismissal of Green's termination-based claims.  See Anderson v. Dep't of Children & Families, No. 3:05-CV-00167, 2007 WL 3171361, at *2 (D. Conn. Oct. 26, 2007) (holding that plaintiff did not exhaust her administrative remedies with respect to her demotion, and dismissing demotion claim, where demotion occurred after plaintiff had filed her CHRO charge), aff'd, 322 F. App'x 15 (2d Cir. 2009); Garris v. Dep't of Corr., 170 F. Supp. 2d 182, 189 (D. Conn. 2001) (holding that plaintiff failed to exhaust her administrative remedies with respect to incidents that were not raised with CHRO, where CHRO maintained jurisdiction after the incidents occurred).

      The second exception to the exhaustion requirement does not apply because Green has not alleged that her employment was terminated in retaliation for her filing a charge of discrimination with the EEOC or CHRO.  Rather, Green merely alleges that her employment was terminated, without stating a reason, and without even mentioning her EEOC or CHRO charge.  (Dkt. No. 11 ¶ 4(B).)  A conclusory allegation that her employment was terminated in retaliation for her CHRO charge – which Green has not even made – still would not suffice.  Alfano, 294 F.3d at 382 (concluding that federal complaint's "vague, conclusory accusations of 'retaliatory

conduct' are insufficient to meet the *Butts* requirement of a specific linkage between filing an EEOC charge and an act of retaliation").

The third exception to the exhaustion requirement does not apply because, with respect to her termination of employment, Green has not alleged "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Alfano, 294 F.3d at 381. This exception is based on the principle that "the values associated with exhaustion are not entirely lost because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents. The fact that a charge alleging the same method was not resolved by the EEOC to the plaintiff's satisfaction makes it more likely that a new charge alleging the later incident would meet the same fate." Butts, 990 F.2d at 1403. Green's CHRO charge did not concern the same method of discrimination as her alleged termination, let alone "discrimination [] carried out in 'precisely' the same manner." Alfano, 294 F.3d at 382. (Dkt. No. 1-1 at 5-13, 31-34.) "A generalized allegation that rules and regulations are applied improperly is not enough to alert the EEOC to a subsequent termination; if it were, the exhaustion requirement would be eviscerated." Alfano, 294 F.3d at 382 (holding that "[t]he district court properly concluded that the subsequent conduct was not reasonably related to the EEOC charge on any of the three bases listed in *Butts*").

A discrimination claim may be reasonably related to a reasonable accommodation claim, for exhaustion purposes, if "the plaintiff was discharged for failing to return to work and the time away from work was the reasonable accommodation sought." Sanchez, 2015 WL 5010619, at *3. However, that exception to the exhaustion requirement does not apply here. Assuming that Green has alleged that she requested time away from work as a reasonable accommodation in

February 2019 (Dkt. No. 1-1 at 13 ¶ 27; Dkt. No. 12 at 23-24), she has not alleged that she was discharged for failing to return to work from such time away.  (Dkt. No. 11.)  Nor has Green alleged any connection between Stop & Shop's alleged failure to accommodate her disabilities and the alleged termination of her employment.  (Id.)

Green did not make any allegations concerning the termination of her employment to the CHRO or the EEOC, and no exception to the exhaustion requirement applies.  Therefore, all claims based on the termination of Green's employment should be dismissed.

### C.   Green Cannot State an Age Discrimination Claim.

In the alternative, even if Green had exhausted her administrative remedies with respect to the termination of her employment, her age discrimination claim should still be dismissed because she has not alleged facts stating a plausible claim that Stop & Shop terminated her employment, or took any other adverse employment action, because of her age.  (Dkt. No. 11 ¶¶ 4, 6.)[3]

"At the pleadings stage, . . . a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  In order to satisfy the pleading standard for an employment discrimination claim, a plaintiff must allege "factual circumstances from which discriminatory motivation may be inferred."  Shlafer v. Wackenhut Corp., 837 F. Supp. 2d 20, 25 (D. Conn. 2011).

---

[3] Other than the termination of her employment, the only adverse employment action that Green alleges is an April 7, 2017 suspension.  (Dkt. No. 1-1 at 7.)  Green filed her CHRO complaint on April 10, 2019.  (Id. at 31.)  Therefore, any claims based on events that occurred more than 300 days earlier – i.e., before June 14, 2018 – are time-barred.  29 U.S.C. § 626(d)(1)(B) (ADEA); 42 U.S.C. § 12117(a) (ADA, incorporating 42 U.S.C. § 2000e–5(e)(1)).

"Discriminatory motivation may be established by allegations of preferential treatment given to similarly situated individuals, or remarks conveying discriminatory animus." Id.  The court in Shlafer dismissed the plaintiff's age discrimination claim because "Plaintiff's complaint fails to allege sufficient facts from which a reasonable trier of fact could infer that Plaintiff was wrongfully discharged on account of his age." Id. at 25-26.

Similarly, in Patane v. Clark, 508 F.3d 106 (2d Cir. 2007), the plaintiff alleged a Title VII sex discrimination claim but did "not allege that she was subject to any specific gender-based adverse employment action" and did not "set forth any factual circumstances from which a gender-based motivation for such an action might be inferred." Id. at 112.  The complaint in Patane did not allege "any remarks that could be viewed as reflecting discriminatory animus" and did not "allege that any male employees were given preferential treatment when compared to Plaintiff." Id.  The Second Circuit affirmed the District Court's dismissal of the plaintiff's Title VII claim because the plaintiff "failed to plead any facts that would create an inference that any [adverse] action taken by ... [any] defendant was based upon her gender." Id. (internal quotation marks and citation omitted).

Absent factual allegations creating an inference of discrimination, a conclusory assertion that the defendant discriminated against the plaintiff is not sufficient to state a plausible claim for employment discrimination. Kpaka v. City Univ. of N.Y., 708 F. App'x 703, 703–05 (2d Cir. 2017) (summary order) (affirming dismissal of Title VII claim because, with one exception, the "complaint was devoid of any factual allegations giving rise to an inference of discrimination"); Baez v. N.Y., 629 F. App'x 116, 118 (2d Cir. 2015) (summary order) (affirming dismissal of Title VII claim because the plaintiff "alleged no facts that directly evidenced discriminatory animus against individuals of Puerto Rican or Hispanic descent"); Samuel v. Bellevue Hosp.

Ctr., 366 F. App'x 206, 207 (2d Cir. 2010) (summary order) (affirming dismissal of Title VII claim because the plaintiff "failed to allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class").

Green's Complaint makes the sort of conclusory allegation of employment discrimination that courts routinely dismiss as insufficient to state a claim. E.g., Francis v. Donahoe, No. 13CV359, 2014 WL 1292191, at *5 (D. Conn. Mar. 31, 2014) (dismissing wrongful termination claim because plaintiff's conclusory allegations "fail to meet the plausibility standard set forth in *Twombly* and *Iqbal*"). Green has not alleged any facts suggesting that her age played any role in the termination of her employment. (Dkt. No. 11.) Other than stating her date of birth and checking a box for age discrimination, Green has not alleged any facts at all relating to her age. (Id. ¶¶ 3, 5.)[4] That is not sufficient to "nudge[] [her] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570; Patane, 508 F.3d at 112. Therefore, Green's age discrimination claim should be dismissed. Caskey v. Cty. of Ontario, 560 F. App'x 57, 59 (2d Cir. 2014) (summary order) (holding that complaint "is not 'plausible on its face,'" and "fails to state either an ADA or ADEA discrimination claim," because the plaintiff "failed to plausibly allege an adverse employment action on the basis of her age or potential disability").

Green has not alleged facts stating a plausible claim that Stop & Shop discriminated against her because of her age. Therefore, her ADEA claim should be dismissed.

**D.     Green Cannot State a Disability Discrimination Claim.**

In the alternative, as with her age discrimination claim, even if Green had exhausted her administrative remedies with respect to the termination of her employment, her disability

---

[4] Green actually checked the boxes asserting discrimination based on sex and national origin, but she presumably intended to check the boxes for age and disability. (Dkt. No. 11 ¶ 5.)

discrimination claim should still be dismissed because she has not alleged facts stating a plausible claim that Stop & Shop terminated her employment, or took any other adverse employment action, because of her disability.  (Dkt. No. 11 ¶¶ 4, 6.)  Green also has not alleged, as she must, that she was qualified to perform the essential functions of her job, with or without reasonable accommodation, at the time of her termination.

To state a claim for discrimination under the ADA, Green must allege that: (1) Stop & Shop is covered by the ADA; (2) Green had a disability, or was regarded by Stop & Shop as having a disability, within the meaning of the ADA; (3) Green was qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) Green suffered an adverse employment action because of her disability or perceived disability.  Groth v. Grove Hill Med. Ctr., P.C., No. 3:14-CV-01563, 2015 WL 4393020, at *2 (D. Conn. July 15, 2015) (citing Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005)).

The same arguments discussed above in connection with Green's age discrimination claim also apply to her disability discrimination claim.  She has not alleged "factual circumstances from which discriminatory motivation may be inferred," such as "preferential treatment given to similarly situated individuals, or remarks conveying discriminatory animus." Shlafer, 837 F. Supp. 2d at 25; see also Patane, 508 F.3d at 112 (affirming dismissal of Title VII sex discrimination claim because plaintiff did "not allege that she was subject to any specific gender-based adverse employment action" and did not "set forth any factual circumstances from which a gender-based motivation for such an action might be inferred").

To be sure, unlike age, Green's Complaint and the exhibits to it do allege facts relating to her disabilities.  However, Green has not alleged any facts from which one could infer that the termination of her employment, or any other adverse employment action, was motivated by

disability discrimination. Green alleges that she "was accused of not being disabled and constantly harassed by HR Rep. Julie Pinard and other managers to prove I was disabled." (Dkt. No. 11 ¶ 4(D).) She also alleges that her accommodation requests were initially denied, then "a compromise was made and I was given some Reasonable Accommodations," which were later taken away. (Id. ¶ 6.) Green also alleges that she "was told by a manager . . . who was told by their manager(s) that I was being transferred because . . . I was dead weight and was to be given all late shifts and mistreated." (Id.) Green has not alleged any connection between these allegations and the termination of her employment. (Id.)

Green's disability discrimination claim should also be dismissed for an additional reason: she has not alleged that, at the time of her termination, she was qualified to perform the essential functions of her job, with or without reasonable accommodation. Groth, 2015 WL 4393020, at *2. The ADA prohibits discrimination "against a qualified individual." 42 U.S.C. § 12112(a). The latest information that Green included with her Complaint is a February 7, 2019 Certification of Health Care Provider stating that she was unable to perform "most" of her job functions at that time and estimating that she would be incapacitated through May 1, 2019. (Dkt. No. 12 at 23.) Green has not alleged that she was denied any requested leave of absence, nor has she alleged that she was ever able to return to work and perform the essential functions of her job, with or without reasonable accommodation. (Dkt. No. 11.) See Ferrante v. Capitol Reg'l Educ. Council, No. 3:14-CV-00392, 2015 WL 1445206, at *5 (D. Conn. Mar. 30, 2015) (to state an ADA discrimination claim, "plaintiff must plead that she can, with or without reasonable accommodation, 'perform the essential functions of the relevant job'") (quoting McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009)); Starr v. Time Warner, Inc., No. 07 CIV. 5871, 2007 WL 4144627, at *4 (S.D.N.Y. Nov. 21, 2007) (dismissing ADA discrimination

claim because plaintiff "has not sufficiently pled that she was qualified to perform her job with or without reasonable accommodations," where plaintiff was out of work on a leave of absence at the time of her termination).

Green has not alleged facts stating a plausible claim that Stop & Shop discriminated against her on the basis of disability or that she was able to perform the essential functions of her job, with or without reasonable accommodation, at the time of her termination.  Therefore, her ADA claim should be dismissed.

### E. Green Cannot State a Failure to Accommodate Claim.

Assuming Green intends to allege a separate claim under the ADA for failure to accommodate, the claim should be dismissed because she has not alleged facts stating a plausible claim that she could perform the essential functions of her job with or without reasonable accommodation or that Stop & Shop refused to make such accommodations.

"To state a claim for failure to accommodate, a plaintiff plausibly must allege four elements: (1) she is a person with a disability within the meaning of the ADA; (2) her employer is covered by the ADA and had notice of her disability; (3) she could perform the essential functions of her job with or without reasonable accommodations; and (4) the defendant refused to make such accommodations."  Gaube v. Day Kimball Hosp., No. 3:13-CV-01845, 2015 WL 1347000, at *5 (D. Conn. Mar. 24, 2015) (dismissing ADA claim because plaintiff "failed to plead adequately the second and third elements").

Green alleged in her CHRO charge that she was denied reasonable accommodations on November 5, 2018 and February 4, 2019.  (Dkt. No. 1-1 at 31.)  It is not clear from Green's Complaint or the exhibits to it what events she alleges occurred on those precise dates, but Green alleges that she met with Pinard in November 2018 about her accommodation requests, and Green's doctor completed a Certification of Health Care Provider in February 2018.  (Dkt. No. 1-

1 at 11 ¶ 20; Dkt. No. 12 at 25.)  For the reasons discussed below, Green cannot state a failure to accommodate claim based on either the November 2018 events or the February 2019 events.

Green cannot state a failure to accommodate claim based on the November 2018 events because she has not alleged that Stop & Shop refused to make any accommodations at that time. Green's November 2018 meeting with Pinard concerned the accommodation of Green's having someone work with her during her once-a-week night shifts.  (Dkt. No. 1-1 at 11 ¶ 20.)  That accommodation had been provided to Green, but it was taken away when Pinard asked Green to get a letter from her doctor stating why she couldn't work alone, and Green's doctor did not provide the requested letter.  (Id. at 12 ¶¶ 21-22.)  Therefore, Green cannot state a failure to accommodate claim based on the November 2018 events.  See Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 260 (S.D.N.Y. 2015) (granting summary judgment on failure to accommodate claim because "the delay in granting Plaintiff's medical leave was due to her failure to submit documentation of her disability despite JCCA's requests"); Zito v. Donahoe, 915 F. Supp. 2d 440, 447–48 (S.D.N.Y. 2012) (granting summary judgment on failure to accommodate claim because the plaintiff "was responsible for the breakdown in the interactive process" by failing to provide documentation to assist the employer in understanding the nature of his disability and how best to accommodate that disability); Kennedy v. United Techs. Corp., No. 3:09CV1381, 2012 WL 3728141, at *6 (D. Conn. Mar. 28, 2012) (granting summary judgment on failure to accommodate claim because the defendant "asked for an information release authorization so its medical department could follow up on" the plaintiff's accommodation request, "but the plaintiff refused to provide one"); Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996) (affirming summary judgment on failure to

accommodate claim, where the employee failed to provide requested medical information about her disability and her need for an accommodation).

Green cannot state a failure to accommodate claim based on the February 2019 events because she has not alleged that she was able to perform the essential functions of her job at that time with or without reasonable accommodation, and she has not alleged that Stop & Shop denied her any requested accommodation.  As of February 7, 2019, Green's doctor wrote that she was unable to perform "most" of her job functions and that she had been incapacitated since February 1, 2019 and would remain incapacitated through May 1, 2019.  (Dkt. No. 12 at 23-24.)  Green's doctor recommended that she take "an extended leave of absence" from work in February 2019.  (Dkt. No. 1-1 at 13 ¶ 27.)  Green has not alleged that Stop & Shop denied her a leave of absence, nor has she alleged that any other accommodation would have enabled her to perform the essential functions of her job in or after February 2019.  (Dkt. No. 6.)  Therefore, Green cannot state a failure to accommodate claim based on the February 2019 events.  See McMillan v. City of N.Y., 711 F.3d 120, 125-26 (2d Cir. 2013) (to state a failure to accommodate claim, plaintiff must allege that "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue" and that "the employer has refused to make such accommodations") (citation omitted); see also Mitchell v. Wash. Cent. Sch. Dist., 190 F.3d 1, 9 (2d Cir. 1999) (ADA does not require employer to provide employee with indefinite leave of absence, where employee is unable to work and has not informed employer that he expects to be able to return to work).

Green has not alleged facts stating a plausible claim that Stop & Shop refused to make reasonable accommodations in November 2018 or February 2019, or that she was able to

perform the essential functions of her job with or without reasonable accommodation in February 2019.  Therefore, Green's failure to accommodate claim should be dismissed.

## IV. **CONCLUSION**

For the foregoing reasons, Stop & Shop respectfully requests that the Court dismiss all claims that Green has alleged.

DEFENDANT THE STOP & SHOP
SUPERMARKET COMPANY LLC

By:   /s/ Glenn W. Dowd
Glenn W. Dowd (#ct12847)
Howard Fetner (#ct26870)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
(860) 275-0100 (phone)
(860) 275-0343 (fax)
gwdowd@daypitney.com
hfetner@daypitney.com

Its attorneys

## **CERTIFICATION**

I hereby certify that on April 9, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

          /s/ Glenn W. Dowd

-19-

105239734.3